IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ASGHAR R. SADRI, | ) | CIVIL NO. 07-00109 SOM/BMK |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER (1) GRANTING TAKAYESU'S |
| vs. | ) | MOTION TO DISMISS, (2) GRANTING |
| | ) | APANA'S SUBSTANTIVE JOINDER IN |
| JAMES H. APANA, an | ) | TAKAYESU'S MOTION, (3) GRANTING |
| individual; JAMES TAKAYESU, | ) | MINATOYA'S MOTION TO DISMISS, |
| an individual; JOHN MIN, an | ) | AND (4) DENYING ARAKAWA'S |
| individual; RICHARD MINATOYA, | ) | MOTION TO DISMISS |
| an individual; ALAN ARAKAWA, | ) | |
| an individual; BRIAN T. MOTO, | ) | |
| an individual; and DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER (1) GRANTING TAKAYESU'S MOTION TO DISMISS,
(2) GRANTING APANA'S SUBSTANTIVE JOINDER IN TAKAYESU'S MOTION,
(3) GRANTING MINATOYA'S MOTION TO DISMISS, AND
(4) DENYING ARAKAWA'S MOTION TO DISMISS

I.      INTRODUCTION.

        This case arises out of a land use dispute.  Plaintiff

Asghar R. Sadri entered into an agreement to buy land in Paia on

the Big Island of Hawaii, and title to that property allegedly

should have been conveyed to him.  Since 2001, Sadri and his

predecessor-in-interest have been in a dispute with the County of

Maui over the conditions necessary for the development of the

Paia land.  Recently, Sadri changed his litigation strategy and

is now suing not the County but various individuals employed by

the County.

        On March 2, 2007, Sadri filed the Complaint in this

matter.  He amended that Complaint on March 8, 2007.  The Amended

Complaint asserts five claims: Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961 (Count I); substantive and procedural due process and equal protection claims under 42 U.S.C. § 1983 (Count II); a right to injunctive and declaratory relief (Count III); conspiracy to violate individual rights (Count IV); and intentional and negligent infliction of emotional distress (Count V).  Sadri's Amended Complaint names six individuals as defendants in their individual capacities: (1) James Apana, a former Mayor of the County of Maui; (2) James Takayesu, a former Corporation Counsel for the County of Maui; (3) John Min, a Director of the County of Maui Department of Planning; (4) Richard Minatoya, a Deputy Corporation Counsel for the County of Maui; (5) Alan Arakawa, another former Mayor of the County of Maui; and (6) Brian T. Moto, another former Corporation Counsel for the County of Maui.

Minatoya, Arakawa, and Takayesu have moved to dismiss the Amended Complaint on statute of limitations grounds.[1]  Apana has filed a substantive joinder in Takayesu's motion.  Because all of Sadri's claims against Apana, Minatoya, and Takayesu are untimely, and because Sadri has failed to establish any reason to

_____

[1]The hearing on Moto's motion to dismiss on statute of limitations grounds has been set for a later date.

Min has not filed a motion to dismiss.

2

toll the applicable limitation periods, the court grants the
motions by Apana, Minatoya, and Takayesu.

The court denies Arakawa's motion without prejudice, as
the Amended Complaint, when construed in the light most favorable
to Sadri, possibly alleges claims against Arakawa based on
conduct that occurred within two years of the filing of the
Complaint.  This denial is, of course, without prejudice to the
filing of another motion by Arakawa on a different record.  While
Arakawa may again argue that Sadri's claims are barred by the
applicable statutes of limitations, the court is not limiting
Arakawa to timeliness grounds in any subsequent motion.[2]

II.      STANDARD OF REVIEW.

Rule 12(b)(6) of the Federal Rules of Civil Procedure
permits dismissal of a complaint when it fails "to state a claim
upon which relief can be granted."  Under Rule 12(b)(6), review
is generally limited to the contents of the complaint.  Sprewell
v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001);
Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996).  If
matters outside the pleadings are considered, the Rule 12(b)(6)
motion is treated as one for summary judgment.  See Keams v.

---

[2]For example, on June 26, 2007, Arakawa filed a supplement
directing this court to read Wilkie v. Robbins, No. 06-219 (S.
Ct. June 25, 2007).  Because Wilkie does not pertain to statutes
of limitations, it is inapplicable to the present motion.
Arakawa may, of course, file another motion based on the holding
in Wilkie.

Tempe Tech. Inst., Inc., 110 F.3d 44, 46 (9th Cir. 1997); Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996).  Courts may "consider certain materials--documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice--without converting the motion to dismiss into a motion for summary judgment."  United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).  Documents whose contents are alleged in a complaint and whose authenticity are not questioned by any party may also be considered in ruling on a Rule 12(b)(6) motion to dismiss.  See Branch v. Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994).

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996).  However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss.  Sprewell, 266 F.3d at 988; Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996). Additionally, the court need not accept as true allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. Sprewell, 266 F.3d at 988.

4

Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. <u>Balistreri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1988) (citing <u>Robertson v. Dean Witter Reynolds, Inc.</u>, 749 F.2d 530, 533-34 (9th Cir. 1984)). A motion to dismiss may also be granted if an affirmative defense or other bar to relief is apparent from the face of the complaint, such as a statute of limitations. <u>Imbler v. Pachtman</u>, 424 U.S. 409 (1976).

III.     <u>BACKGROUND FACTS.</u>

Except as noted otherwise, the "facts" stated in this section are the facts alleged in Sadri's Amended Complaint. The court makes no determination as to the accuracy of these facts and describes them only to provide background for these motions.

Although Sadri is not on title, Sadri is the equitable owner of Apartment B, 3045 Hana Highway, Paia, Hawaii 96779, Tax Map Key No. 2-5-5-16. Amended Complaint (March 8, 2007) ¶ 9. For years before 1992, this land was owned by Alexander & Baldwin, which, in 1992, sold the land to Kurt Ulmer. <u>Id.</u> ¶ 22.

On or about May 10, 1995, Ulmer divided the land into three parcels as part of a condominium project under Chapter 514A of the Hawaii Revised Statutes. This condominium project was to have three apartments on it and was called the "Montana Beach Condominiums." <u>Id.</u> ¶ 23. Building permits and written Special

5

Management Area ("SMA") exemptions were obtained for the three apartments.  Id. ¶¶ 32, 35.

On or about January 17, 2000, Sadri signed a Land Sales Agreement to buy Apartment B of the Montana Beach Condominiums ("Apartment B") for $2.5 million.  Id. ¶¶ 25, 35.  Sadri says that he relied on the validity of the building permit and the SMA exemption for his lot in deciding to spend $2.5 million for the lot.  Id. ¶ 35.

On February 17, 2000, Ulmer conveyed title to Apartment B to his company, Montana Beach LLC.  Id. ¶¶ 26-27.  Apparently, Sadri and Ulmer had a dispute about the DROA.  This dispute was arbitrated, and the arbitrator ruled that Sadri was entitled to specific performance.  Sadri says that he has not yet received actual title to Apartment B because Ulmer has been unable to specifically perform until he can convey the building permit for the property.  Id. ¶ 35.

Around September 2000, the County of Maui began requiring an official, written statement of exemption from the SMA permit requirements on a form SM-5.  In December 2000 and January 2001, then-County of Maui Planning Commission Director, Min, granted Sadri the SMA exemption.  Id. ¶ 37.

In January 2001, Christina Hemming, a "citizen," challenged the SMA exemption given to Sadri.  Id. ¶ 39.  This challenge was heard as a contested case and resulted in the

issuance of Findings of Fact, Conclusions of Law, Decision and Order on August 10, 2004.  Id. ¶ 40.  Sadri does not allege in the Amended Complaint and does not contend for purposes of these motions that the individual defendants named in this action were parties to this contested case hearing.  To the contrary, the Amended Complaint alleges that the parties to the contested case were the owners of the Montana Beach Condominiums, including Sadri, the County of Maui, and Christina Hemming.  Id. ¶¶ 39-41. All of the parties to the contested case filed an appeal in the state's Second Circuit Court.  The Amended Complaint alleges that other condominium owners settled their claims with the County of Maui.  Id. ¶ 41.  It appears that the appeal of the contested case ruling was stayed while mediation efforts proceeded.  Id. ¶ 40.

Between January and June 2001, the construction of the Montana Beach Condominiums allegedly became a political issue between pro- and anti-development groups on Maui.  At that time, the Mayor of the County of Maui was Apana.  Id. ¶ 42.  Sadri says that, in June 2001, Apana told the owners of the Montana Beach Condominiums that, unless the owners agreed to give the County of Maui a fifteen-foot-wide beach access easement across their properties, he would have their building permits suspended and SMA exemptions rescinded.  Id. ¶¶ 44, 46.  Sadri says that, when he did not grant the County the requested easement, Apana caused

the suspension of the building permit and rescission of the SMA exemption for his property.  Id. ¶ 51.

Sadri alleges that each Defendant "knew that it was politically desirable for the [2001] County administration to delay [Sadri's] occupancy and completion of [his] residence[] until after the next mayoral election, and each acted in bad faith with actual malice to help achieve the political goals of the County administration to the detriment of [Sadri]."  Id. ¶ 50.

On or about July 27, 2001, Apana requested an opinion letter from the County of Maui's Corporation Counsel as to whether the County's long-standing practice of issuing SMA exemptions for up to three residences on a single property was valid.  Id. ¶ 52.  On July 30, 2001, Minatoya, a Deputy Corporation Counsel, wrote a "preliminary opinion" that was approved by Takayesu, the County of Maui's then-Corporation Counsel.  This "preliminary opinion" stated that the long-standing practice was probably invalid.  Id. ¶ 55.

On July 31, 2001, Apana specifically asked Takayesu whether the "preliminary opinion" applied to the three residences that were to be constructed as the Montana Beach Condominiums. Id. ¶ 56.  That same day, apparently relying on the "preliminary opinion," Apana sent a letter to Min, the Director of the Planning Department for the County of Maui, asking Min to suspend

8

the building permits for the Montana Beach Condominiums.  Id.
¶ 57.

On or about August 1 or 2, 2001, Min suspended the
building permits and the SMA exemption for the Montana Beach
Condominiums.  Id. ¶ 58.

On August 7, 2001, Minatoya wrote an official letter
that, like the "preliminary opinion," stated that the County's
long-standing practice of issuing SMA exemptions for more than a
single residence was void.  This official opinion, approved by
Takayesu, stated that the owners of the Montana Beach
Condominiums could apply for SMA permits and a zoning change.
Id. ¶¶ 59-61.  The official opinion letter was revised on August
8, 2001.  Id. ¶ 63.

On August 8, 2001, Min confirmed the rescission of the
SMA exemption in a letter to the property owners.  Id. ¶ 64.
This letter notified the property owners of their right to appeal
that decision.  Id.  Sadri and the other owners appealed that
decision on August 10, 2001.  Id. ¶ 66.

During the pendency of the contested case hearing for
the rescission of the SMA exemption, Arakawa defeated Apana in
the 2002 mayoral election for the County of Maui.[3]  Id. ¶ 43.
Moto replaced Takayesu as the Corporation Counsel during the

---

[3]The court takes judicial notice of Arakawa's defeat in the
2006 County of Maui mayoral election by Charmaine Tavares.

9

Arakawa administration, and Moto adopted the County of Maui's position that the owners of the Montana Beach Condominiums should settle the contested case by donating a beach access easement to the county. Id. ¶ 72.

Apparently, this dispute spawned both federal and state court litigation. Dennis and Diane Holland, owners of another apartment in the Montana Beach Condominiums, filed a federal case on February 6, 2002. The Hollands were represented in that case by James H. Fosbinder, the attorney representing Sadri in the present case. The defendants named in that case were the County of Maui, the Department of Planning for the County of Maui, John Min (Director of the Department of Planning), Clayton Yoshida (Deputy Director of the Department of Planning), George Chun (Managing Director of the Department of Planning), the Department of Public Works and Waste Management of the County of Maui, Milton Arakawa (Deputy Director of Public Works, not to be confused with Alan Arakawa, sued here), and David Goode (Director of Public Works and Waste Management). See Holland, et al., v. County of Maui, et al., Civ. No. 02-00071 HG-BMK; Amended Complaint ¶ 75. Sadri alleges that the County of Maui, through its attorneys, Defendants Minatoya and Takayesu, asserted in a motion in that case that the claims against the County of Maui were not ripe because the contested case could determine those claims. Sadri asserts that the County of Maui told the United

10

States District Court that the County's Planning Commission could determine equitable and constitutional claims.  Amended Complaint ¶ 75.  According to Sadri, United States District Judge Helen Gillmor ruled on July 5, 2002, that the Hollands' claims were not ripe.  Id. ¶ 76.  On June 7, 2004, Judge Gillmor's ruling was reversed on appeal in an unpublished decision.  See Holland v. County of Maui, 100 Fed. Appx. 683, 2004 WL 1261872 (9th Cir. June 7, 2004).

Sadri says that, in September 2002, the County of Maui, through its Corporation Counsel (Takayesu), took a position in the contested case hearing that was inconsistent with the argument made to Judge Gillmor that the County's Planning Commission could determine equitable and constitutional claims. According to Sadri, the County of Maui, in the contested case hearing, argued that the Maui Planning Commission was not a court of equity and was not equipped to deal with constitutional questions.  Id. ¶ 77.  Sadri says that Moto, who replaced Takayesu, continued to take this position and that, based on those representations, the Planning Commission ultimately refused to adjudicate Sadri's equitable and constitutional claims.  Id. ¶ 78.

On June 13, 2003, the Hollands filed a second federal complaint arising out of the Montana Beach Condominiums.  This complaint asserted claims against the County of Maui, Apana

(Maui's former Mayor), and Takayesu (Maui's former Corporation Counsel).  See Holland, et al. v. Apana, et al., Civ. No. 03-00296 HG/BMK.  Sadri alleges that the County of Maui, through a Deputy Corporation Counsel, filed a motion to dismiss, again claiming that the Hollands could raise their constitutional claims in a contested case hearing.[4]  Amended Complaint ¶ 79.

Sadri says that, on December 8, 2003, a County of Maui Deputy Corporation Counsel again took an inconsistent position in the contested case, arguing that the Planning Commission did not have jurisdiction to decide equitable matters.  Id. ¶ 80.  The present case seeks to hold Moto individually liable for the acts of attorneys acting as Deputy Corporation Counsel while Moto was Maui's Corporation Counsel.  See id. ¶¶ 79-80 (imputing the conduct of attorneys acting as Deputy Corporation Counsel to Moto).

IV.     ANALYSIS.

In his Opposition, Sadri voluntarily dismisses his declaratory and injunctive relief claims (Count III) to the extent those claims are asserted against Minatoya, Arakawa, Takayesu, and Apana.  See Opposition (May 31, 2007) ("Defendants' motions to dismiss should be denied, except as to the claim for declaratory and injunctive relief against each moving defendant,

_____

[4]This court takes judicial notice of the case docket, which indicates that Apana and Takayesu were represented by private counsel in this second Holland case.

Defendant Minatoya, Defendant Apana, Defendant Takayesu, and Defendant Arakawa, which Plaintiff voluntarily dismisses."). Accordingly, those claims no longer remain for adjudication.

The motions before this court seek dismissal of the Amended Complaint based on statute of limitations grounds.  All parties agree that a four-year limitation period applies to Sadri's RICO claims and that a two-year limitation period applies to all of the other claims asserted in the Amended Complaint. See Opposition at 23 ("The parties agree that a four year statute of limitation applies to civil RICO claims.") ("Plaintiff's remaining claims have a two year statute of limitations.").

    A.    Applicable Limitation Periods.

        1.    Rico Claims Have a Four-Year Limitation Period.

Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143, 156, established a four-year limitation period for civil RICO claims such as the claims asserted in Count I of the Amended Complaint.  A RICO action accrues when a plaintiff knows or should know of the injury that underlies his cause of action. See Pincay v. Andrews, 238 F.3d 1106, 1109 (9th Cir. 2001).  In other words, a RICO action accrues when a plaintiff has actual or constructive notice of the injury.  Id.  Unless the limitation period has somehow been tolled, Sadri's RICO claims are time-barred if they accrued more than four years before March 2, 2007, the date Sadri filed the Complaint in this matter.

2.    Claims Brought Pursuant to § 1983 Have a Two-
         Year Limitation Period.

Sadri's substantive and procedural due process and

equal protection claims brought under 42 U.S.C. § 1983 (Count II)

are subject to a two-year statute of limitation based on Hawaii

law.  See Turner v. City & County of Honolulu, 2007 WL 1341132,

*2 n.3 (D. Haw. May 3, 2007); Sadri v. Ulmer, 2007 WL 869192, *3

(D. Haw. March 21, 2007).  Although Hawaii law determines the

length of the limitation period, federal law determines when a

civil rights claim accrues.  Knox v. Davis, 260 F.3d 1009, 1013

(9th Cir. 2001).  "A statute of limitations under § 1983 . . .

begins to run when the cause of action accrues, which is when the

plaintiffs know or have reason to know of the injury that is the

basis of their action."  RK Ventures, Inc. v. City of Seattle,

307 F.3d 1045, 1058 (9th Cir. 2002).  Unless the limitation

period has somehow been tolled, Sadri's § 1983 claims are time-

barred if they accrued more than two years before March 2, 2007,

the date Sadri filed the Complaint in this matter.

Sadri argues that, based on Sadri v. Ulmer, 2007 WL

869192 (D. Haw. March 21, 2007), his § 1983 claims did not begin

to accrue until the Planning Commission issued its decision on

August 10, 2004.  That argument is unpersuasive.  In Ulmer, Judge

Alan C. Kay noted that a federal claim generally accrues when a

plaintiff knows or has reason to know of the injury that is the

basis for the action.  Ulmer, 2007 WL 869192, *4 (citing Norco

14

Constr., Inc. v. King County, 801 F.2d 1143, 1145 (9th Cir. 1986)).  Ulmer involved substantive due process, procedural due process, and equal protection challenges arising out of the application of land use regulations.  Ulmer, 2007 WL 869192, *4. In determining when the claims accrued, Judge Kay analogized those claims to a takings claim.  In the takings context, the statute of limitations begins to run on the date of the final decision by the government entity.  Id. (citing McMillan v. Goleta Water Dist., 792 F.2d 1453, 1457 (9th Cir. 1986)).  Judge Kay noted that the Ninth Circuit applies this same "final decision" analysis to determine ripeness of due process and equal protection claims under § 1983 that arise out of the application of land use regulations.  Ulmer, 2007 WL 869192, *4 (citing Del Monte Dunes at Monterey, Ltd. v. City of Monterey, 920 F.2d 1496, 1507 (9th Cir. 1990)).  Judge Kay ruled, however:

> Where plaintiff's due process and equal protection injuries are separate from any purported taking, independent of whether or not the governmental entity's decision-making has been completed, and do not directly arise from or rely on a taking claim, those due process and equal protection claims will accrue even though the governmental entity has not made a final and authoritative determination of the development allowed on plaintiff's property.

Ulmer, 2007 WL 869192, *5 (citing Carpinteria Valley Farms, Ltd. v. County of Santa Barbara, 344 F.3d 822, 831 (9th Cir. 2003)).

This judge finds Judge Kay's reasoning persuasive.

15

Sadri's due process and equal protection claims asserted in the Amended Complaint do not arise out of the application of land use regulations.  Paragraph 102 of the Amended Complaint asserts claims based on the length of time the contested case took and the manipulation of the judicial and hearing processes.  Paragraph 99 of the Amended Complaint disavows any relation to the land-use issues that were asserted in the contested case hearing before the Planning Commission, stating that, "[n]o matter what the outcome of the administrative contested case proceedings, the Plaintiff's constitutional and other federal rights have been and are being violated by Defendants."  Accordingly, the accrual of the due process and equal protection claims asserted by Sadri in Count II of the Amended Complaint does not turn on when the Planning Commission issued its final decision on the contested case hearing.

> 3.    Claims Brought Pursuant to § 1985(3) Have a Two-Year Limitation Period.

Count IV of the Amended Complaint asserts a claim for conspiracy to violate individual rights.  At the hearing on these motions, Sadri clarified that Count IV is being asserted under 42 U.S.C. § 1985(3).  Claims brought pursuant to § 1985(3) are subject to the same two-year statute of limitations as § 1983 claims.  McDougal v. County of Imperial, 942 F.2d 668, 673-74 (9th Cir. 1991) ("suits under § 1985(3) are also best characterized as personal injury actions and are governed by the

same statute of limitations as actions under § 1983"); see also

Cole v. State of Hawaii, County of Hawaii, et al., Civ. No.

05-00325 JMS-BMK, 2006 WL 278595, *7 (D. Haw. Jan. 25, 2006)

("Hawaii's two-year statute of limitations for personal injury

actions applies to Cole's § 1985 claim.").  Unless the limitation

period has somehow been tolled, Sadri's § 1985(3) claims are

time-barred if they accrued more than two years before March 2,

2007, the date Sadri filed the Complaint in this matter.

>
> 4.   Emotional Distress Claims Have a Two-Year
>       Limitation Period.

Count V of the Amended Complaint asserts claims for

intentional and negligent infliction of emotion distress.

"Section 657-7 of the Hawaii Revised Statutes provides that

'actions for the recovery of compensation for damage or injury to

persons or property shall be instituted within two years after

the cause of action accrued.'  This limitation applies to

Plaintiff's personal injury claims of negligent and intentional

infliction of emotional distress and negligence." Linville v.

State of Hawaii, 874 F. Supp. 1095, 1104 (D. Haw. 1994).  Unless

the limitation period has somehow been tolled, Sadri's emotional

distress claims are time-barred if they accrued more than two

years before March 2, 2007, the date Sadri filed the Complaint in

this matter.

> B.   Unless the Limitation Periods Have Been Tolled, Sadri's Claims Against Apana, Takayesu, and Minatoya are Time-Barred.

Apana was the Mayor of the County of Maui until January 2003, when Arakawa was sworn in as the Mayor of the County of Maui.  Takayesu, Apana's Corporation Counsel, held his position for that same period.  Sadri's claims against former Mayor Apana and former Corporation Counsel Takayesu are based on acts alleged to have been done by Apana and/or Takayesu in 2001 or 2002.  See, e.g., Amended Complaint ¶¶ 44, 46, 52, 55, 56, 59-61.  Similarly, the claims asserted against former Deputy Corporation Counsel Minatoya involved alleged conduct in July and August 2001.  See id. ¶¶ 55, 59-61.

Paragraphs 44 and 46 of the Amended Complaint indicate that then-Mayor Apana met with the owners of the Montana Beach Condominiums (presumably including Sadri) on June 20, 2001.  At that meeting, Apana allegedly told the owners that they had to grant an easement across their property if they did not want their building permits and SMA exemptions rescinded.  Paragraph 51 of the Amended Complaint alleges that Apana caused the rescission of those building permits and SMA exemptions when the owners refused to comply with his demand.  These allegations indicate that Sadri knew or should have known about the alleged injuries caused by Apana's conduct in 2001.  Unless Sadri can demonstrate some reason to toll the limitation period, Sadri's

18

claims against Apana are time-barred, as the Amended Complaint alleges that Apana committed certain acts more than four years before the filing of the Complaint.

Paragraphs 52, 55, 57, 59-61, and 63 allege that then-Deputy Corporation Counsel Minatoya drafted opinion letters in July and August 2001, and that then-Corporation Counsel Takayesu approved those opinion letters at those times.  Sadri alleges that, because of these letters, then-Director of the Department of Public Works and Waste Management Min revoked the SMA exemptions and suspended the building permits for the Montana Beach Condominiums.  See Amended Complaint ¶¶ 57-58.  On August 8, 2001, Min wrote a letter to Sadri's counsel, confirming that Sadri's SMA exemption had been rescinded.  Thus, Sadri knew or should have known about any alleged injury caused by Minatoya's and/or Takayesu's conduct in 2001.  Unless Sadri can demonstrate some reason to toll the limitation period, Sadri's claims against Minatoya and Takayesu are time-barred, as the Amended Complaint only alleges conduct on their part that occurred more than four years before the filing of the Complaint.

C.    Arakawa's Motion is Denied, as the Amended
      Complaint Possibly Alleges that Arakawa Committed
      Acts Within Two Years of the Filing of the
      Complaint in This Matter.

Sadri's Amended Complaint is practically devoid of any allegation of wrongdoing by former Mayor Arakawa, who replaced Apana as Mayor in January 2003.  Paragraph 42 states that Arakawa publically spoke out against the Montana Beach Condominiums and took an anti-development stance in 2001.  Paragraph 43 alleges that, after his election, Arakawa "perpetuated the wrongs against Plaintiff Sadri and the other owners as more fully set forth herein."  Paragraph 72 alleges that, during the contested case hearing and mediation process, Arakawa's Corporation Counsel, Moto, at Arakawa's direction, continued to take the position originally taken by Apana that Sadri should settle the matter by donating an easement to the county and/or settle the matter through other proposed non-monetary settlements.  See also Amended Complaint ¶ 91(13) on page 29.  The Amended Complaint alleges two conspiracies, one by Apana, Minatoya, Takayesu, and Min under Apana's administration, and one by Arakawa and Moto under Arakawa's administration.  Id. ¶ 111.

Because the Amended Complaint contains only general allegations pertaining to Arakawa, this court cannot determine based on those allegations whether Arakawa committed any acts within the appropriate statutes of limitations.  At the hearing, Sadri admitted that the Amended Complaint did not clearly allege

any act by Arakawa occurring within two years of the filing of the Amended Complaint.  Paragraph 72, however, does allege that Arakawa directed Moto to perpetuate allegedly unlawful conduct "throughout the contested case hearing and during a two-year long formal mediation process."  It is unclear when the mediation process ended.  It is also unclear exactly what actions Arakawa took to continue or perpetuate what Sadri claims was Apana's unlawful conduct.  Sadri's counsel's representation at the hearing on the present motions went to the lack of clarity of the allegations in the Amended Complaint.  That lack of clarity saves Sadri on Arakawa's present motion, although it may not be sufficient on a fuller record.  On this motion to dismiss, the court draws all inferences in Sadri's favor.

The Amended Complaint possibly alleges that Arakawa committed some act within two years of the filing of the Complaint.  The court therefore denies Arakawa's motion without prejudice to Arakawa's filing of another motion on a different record.

> D.   Sadri Fails to Establish that the Claims Did Not Accrue Until the Arbitrator Determined that He Owned the Property in 2004.

Sadri argued at the hearing that his claims did not accrue until the arbitrator issued his 2004 decision that Sadri was entitled to specific performance of the Land Sales Agreement. Sadri signed the Land Sales Agreement in January 2000.  Since

that time, he has been attempting to build on his property.  In essence, Sadri argues that because he did not have an arbitrator's ruling indicating that he was entitled to purchase the property, he was not injured until that ruling.  That argument is unpersuasive.

Sadri cannot have it both ways.  If Sadri was not entitled to purchase the land, he could not have been personally harmed by acts injuring his predecessor in interest.  Thus, for example, if Sadri did not have an interest in the property before 2004, then Sadri was not injured when Apana told the owners of the Montana Beach Condominiums that they had to grant the County of Maui a beach access easement or lose their building permits and SMA exemptions.  In that event, only Ulmer or Montana Beach LLC was injured.  Because Sadri is claiming that he had an interest in the property when Apana made that statement to the "owners," Sadri must have known of any injury when the statement was made and when the permit and exemption were rescinded.  Sadri could have filed suit at that time, instead of waiting until an arbitrator told him years later that he was entitled to specific performance of the land sales agreement.  Sadri cites no authority indicating that he had to wait to file this action until the arbitrator ruled.

Sadri's conduct belies his argument that he could not assert claims until the arbitrator ruled in 2004 that he was

entitled to specific performance of the Land Sales Agreement with Ulmer. Sadri has been asserting claims in the administrative context since January 2001. <u>See</u> Amended Complaint ¶¶ 39-40. For example, Sadri took part in the contested case hearing regarding the property beginning in January 2001. <u>Id.</u> Sadri then continued to assert rights in the appeal of the contested case's August 2004 decision. <u>Id.</u> ¶¶ 40, 66.

Finally, Sadri fails to explain why he waited more than two years after the arbitrator ruled in 2004 to file the present action.

E.   Sadri Does Not Establish that the Limitation
     Period for Any of His Claims Was Tolled.

Sadri initially argues that the statutes of limitations were tolled while the court-ordered mediation was pending. Sadri argues that statutes of limitations are normally tolled "while the parties engage in mandatory mediation." The problem with this argument is that Sadri does not show that any Defendant in this case was a party to the mediation. At the hearing on the present motions, Sadri argued that the mediator attempted to negotiate a global settlement that included all claims arising out of the underlying facts. However, a global settlement would not automatically make any Defendant in the present case a party to the mediation. Moreover, even if Defendants in the present case were parties to the mediation, Sadri does not establish that they were parties pursuant to any court order. A court may have

23

ordered the parties before the court to mediate, but there is no reason to think the court ordered Defendants to participate if they were not parties to the formal dispute before the court.

The court is not persuaded by Sadri's citation of authority for the proposition that settlement negotiations may toll a limitation period.  The cited cases are distinguishable, as they do not involve tolling under the circumstances presented here.  Michelson v. Mid-Century Insurance Company, 99 Cal. Rptr. 2d 804 (Ct. App. 2000), for example, involved parties to litigation who were also parties to a mediation.  The California court noted that the limitation period was tolled under California law that specifically provided for such tolling during mediation.  There is no indication that the individual Defendants named in this case, even if they were parties to the mediation, were subject to any state law providing for tolling of limitation periods during mediation.  Gabe Staino Motors v. Volkswagen, 2003 WL 22735379 (E.D. Pa. 2003), and Landis v. Physicians Insurance Company, 628 N.W.2d 893 (Wis. 2001), are similarly distinguishable, as they also involved state statutes that provided for tolling of limitation periods while parties mediated the claims.  Finally, Duke of Westminster v. Cessna Aircraft Company, 2003 WL 21384320 (D. Kan. 2003), did not involve the tolling of a limitation period based on mediation.

Sadri next asserts that, under the doctrines of equitable tolling and/or judicial estoppel, the limitation period should have been tolled. "Generally, a litigant seeking equitable tolling [of a statute of limitations] bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Office of Hawaiian Affairs v. State, 110 Haw. 338, 360, 133 P.3d 767, 789 (2006). "Extraordinary circumstances are circumstances that are beyond the control of the complainant and make it impossible to file a complaint within the statute of limitations." Office of Hawaiian Affairs, 110 Haw. at 360, 133 P.3d at 789. Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." New Hampshire v. Maine, 532 U.S. 742, 749 (2001). Sadri fails to establish that equitable tolling or judicial estoppel applies here.

First, the doctrine of equitable tolling is inapplicable, as Sadri has not demonstrated that he has been diligently pursuing his rights. At most, Sadri says that he has been pursuing claims against the County of Maui through the contested case hearing, the appeal from that hearing, and the mediation of the claims on appeal. Here, however, Sadri is suing

various people in their individual capacities.  Sadri makes no
showing that he has been diligently pursuing claims against the
individuals named in this case.  To the contrary, it appears that
Sadri pursued claims against the County of Maui and only recently
asserted claims against the individual Defendants named in this
case.

Second, equitable tolling and judicial estoppel are
inapplicable because Sadri fails to show that some extraordinary
circumstance existed or that the individual Defendants' conduct
somehow prevented him from filing this action.  Sadri says that,
in the two Holland cases before Judge Gillmor, Apana (as a
Defendant) and Minatoya and Takayesu (as counsel) "undertook
'active conduct' to prevent the property owners from suing in
time."  See Opposition at 32.  Sadri says that, in the Holland
cases, Apana, Minatoya, and Takayesu repeatedly contended that
the Hollands' injuries were not ripe and could not be brought
until the Hollands had exhausted their administrative remedies.
Id. at 32-33.  Sadri says that Apana, Minatoya, and Takayesu
should be estopped from taking a position in this case that
contradicts their conduct in the Holland cases.  There are
several things wrong with this argument.

Sadri was not a party to the Holland cases and does not
state anywhere in his opposition that he relied on things stated

in those cases in determining whether he should or could file the present action.

Moreover, Sadri confuses conduct on the part of the County of Maui in one of the <u>Holland</u> cases, Civil No. 02-00071 HG/BMK, with conduct by Apana, Minatoya, and Takayesu.  Paragraph 75 of the Amended Complaint alleges that, in Civil No. 02-00071 HG/BMK, Minatoya, under the direction of Takayesu, filed a document on May 17, 2002, in his capacity as an attorney for the County of Maui.  Sadri alleges that, in that document, the County of Maui through its attorneys, Minatoya and Takayesu, argued to Judge Gillmor that the <u>Holland</u> case was not ripe.  Because Minatoya and Takayesu were not parties to the <u>Holland</u> case, judicial estoppel is inapplicable.  Sadri provides no authority indicating that an attorney who takes a position on behalf of a client in one case cannot assert a contrary position on behalf of himself in a totally separate case involving different parties.

Sadri's attempt to have this court apply judicial estoppel to claims against Apana based on the May 17, 2002, filing is disingenuous, as Apana was not a party to Civil No. 02-00071 HG/BMK.  In that case, the County of Maui allegedly took the position that the Hollands had to exhaust administrative remedies for the claims asserted in that case.  At best, in paragraph 79 of the Amended Complaint, Sadri alleges that Maui's Corporation Counsel filed a motion in Civil No. 03-00296 HG/BMK

27

in which the County of Maui argued that the Hollands could raise
constitutional claims during a contested case hearing.  Apana was
represented by private counsel in Civil No. 03-00296 HG/BMK, and
Sadri fails to establish why statements made by the County of
Maui through its Corporation Counsel should be imputed to Apana.
Accordingly, Sadri has made no showing that Apana should be
estopped from asserting a statute of limitation defense here.

Finally, the Ninth Circuit ruled on June 7, 2004, that
the Holland action should not have been dismissed by Judge
Gillmor on ripeness grounds.  Sadri waited more than two years
after that ruling to file the present action.  Even if the
limitation period should have been tolled from May 17, 2002, when
the County of Maui allegedly argued to Judge Gillmor that the
Hollands' claims were not ripe, through June 7, 2004, all of
Sadri's claims, with the exception of the RICO claims, would be
barred by the applicable two-year statutes of limitations.

With respect to Sadri's RICO claims, Sadri is not
contending that any person argued in previous litigation that
RICO claims were not ripe until administrative remedies had been
exhausted.  Sadri makes no showing that a RICO claim had been
asserted in any other litigation involving the Montana Beach
Condominiums.  Accordingly, there is no reason to toll the RICO
statute of limitation while other litigation arising out of the
facts of this case was pending.  See also City of New York v.

Joseph L. Balkan, Inc., 656 F. Supp. 536, 548 (E.D.N.Y. 1987) ("the City need not exhaust administrative remedies before suing on its RICO claims").

V.      CONCLUSION.

        Sadri has voluntarily dismissed his declaratory and injunctive relief claims (Count III) to the extent those claims were asserted against Minatoya, Arakawa, Takayesu, and Apana. Those claims no longer remain for adjudication.  With respect to the remaining claims, the court (1) grants Takayesu's motion (Docket No. 21 filed on May 2, 2007), (2) grants Apana's substantive joinder in Takayesu's motion (Docket No. 26 filed on May 4, 2007), (3) grants Minatoya's motion (Docket No. 15 filed on April 30, 2007), and (4) denies without prejudice Arakawa's motion (Docket No. 24 filed on May 2, 2007).  This order dismisses all claims against Takayesu, Apana, and Minatoya and leaves for further adjudication the claims other than Count III against Arakawa, and all claims against Moto and Min.

        IT IS SO ORDERED.

        DATED: Honolulu, Hawaii, June 27, 2007.

                                   Susan Oki Mollway
                                   Susan Oki Mollway
                                   United States District Judge

Sadri v. Apana, et al., Civil No. 07-00109 SOM/BMK; ORDER (1) GRANTING TAKAYESU'S MOTION TO DISMISS, (2) GRANTING APANA'S SUBSTANTIVE JOINDER IN TAKAYESU'S MOTION, (3) GRANTING MINATOYA'S MOTION TO DISMISS, AND (4) DENYING ARAKAWA'S MOTION TO DISMISS